David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
**DL LAW GROUP**
345 Franklin St.
San Francisco, CA 94102
Telephone: (415) 678-5050
Facsimile: (415) 358-8484

Attorneys for Plaintiff,
STEVEN P.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN P.<br><br>Plaintiff,<br><br>v.<br><br>ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY; AMN HEALTHCARE SERVICES, INC., and DOES 1 through 10,<br><br>Defendants. | Case No.<br><br>**PLAINTIFF STEVEN P.'S COMPLAINT FOR BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA); BREACH OF FIDUCIARY DUTY; ENFORCEMENT AND CLARIFICATION OF RIGHTS; PREJUDGMENT AND POSTJUDGMENT INTEREST; AND ATTORNEYS' FEES AND COSTS** |

Plaintiff, STEVEN P. herein sets forth the allegations of this Complaint against Defendants ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY ("ANTHEM"); AMN HEALTHCARE SERVICES, INC.; and DOES 1 through 10.

//
//
//
//
//
//
//

1
**COMPLAINT**                                                                 **CASE NO.**

# PRELIMINARY ALLEGATIONS

## JURISDICTION

1. Plaintiff brings this action for relief pursuant to Section 502 (a) (1) (B) and Section 502 (a) (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1132 (a) (1) (B). This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA Section 502 (e) and (f), 29 U.S.C. Section 1132 (e), (f), and (g) and 28 U.S.C. Section 1331 as it involves a claim made by Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. Section 1331 as this action involves a federal question.

2. This action is brought for the purpose of recovering benefits under the terms of an employee benefit plan and enforcing Plaintiff's rights under the terms of an employee benefit plan.

3. Plaintiff seeks relief, including but not limited to: past mental health benefits in the correct amount related to Defendant's improper denial of Plaintiff's claim; prejudgment and post judgment interest; general and special damages; and attorneys' fees and costs.

## PARTIES

4. At all relevant times, Plaintiff STEVEN P. participated in the AMN HEALTHCARE SERVICES CORPORATE HSA ("the Plan"), an employee welfare benefit plan within the meaning of ERISA section 3(1), 29 U.S.C. § 1002(1), sponsored by his employer, Defendant AMN HEALTHCARE SERVICES, INC. ("AMN").

5. The designated "Claims Administrator" under the Plan for mental health benefits was at all relevant times Defendant ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY("Anthem").

6. Anthem is a health insurance provider authorized to transact and currently transacting the business of insurance in the State of California.

7. AMN was the Plan Administrator.

**COMPLAINT**                                                                 **CASE NO.**

8. At all relevant times, the Plan was an insurance plan that offered, *inter alia*, mental health benefits to employees and their beneficiaries, including Plaintiff. This action involves mental health claims denied by the Plan's claims administrator.

## FACTS

9. The Plan guarantees, warrants, and promises "Mental Health Services" for members and their beneficiaries, including but not limited to: health care services, mental health care, and treatment at issue herein.

10. S.P. is STEVEN P.'s daughter, and was, at all relevant times, a beneficiary of the Plan.

11. At all relevant times, the Plan was in full force and effect.

12. The Plan guarantees, promises, and warrants benefits for medically necessary covered health care services.

13. The Plan defines "Medically Necessary" health care services as those

> that a Physician, exercising professional clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are:
> - In accordance with generally accepted standards of medical practice,
> - Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease,
> - Not primarily for the convenience of the patient, Physician or other health care Provider, and
> - Not more costly than an alternative services, including no service or the same service in an alternative setting or sequence of services that is medically appropriate and is likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's injury, disease, illness or condition. For example, the Plan will not provide coverage for an inpatient admission for surgery if the surgery could have been performed on an outpatient basis or an infusion or injection of a specialty drug provided in the outpatient department of a hospital if the drug could be provided in a Physician's office of the home setting.

14. The Plan guarantees coverage for inpatient and outpatient treatment of mental health conditions.

15. California's Mental Health Parity Act, Health & Safety Code §1374.72 and Insurance Code § 10144.5, as well as the Federal Mental Health Parity and Addictions Equity Act of 2008

("MHPAEA") specifically require that health care plans provide medically necessary diagnosis, care and treatment for the treatment of specified mental health illnesses at a level equal to the provision of benefits for physical illnesses.

16. S.P. has a long history of mental illness and emotional disturbance, beginning at a young age.

17. Around sixth grade, S.P. was diagnosed with severe ADHD for which she was prescribed medication. She began seeing a psychiatrist and a therapist.

18. Despite ongoing treatment, S.P.'s condition continued to worsen. In 2017, S.P.'s mom found a note saying that S.P. planned to commit suicide. She was subsequently admitted to the emergency department and then, to Sundance Behavioral Health Hospital, an inpatient treatment center, for seven days.

19. When S.P. returned home, she continued outpatient treatment, but her condition continued to worsen. She began cutting herself.

20. Eventually, S.P.'s suicidal ideation and threats escalated to the point that she was again admitted to the emergency department, and from there, the children's psychiatric unit at Children's Medical Center in Dallas.

21. After her discharge from Children's Medical Center, S.P. participated in an intensive DBT program. She participated in individual and group DBT counseling and received individual therapy several times a week. She continued taking psychiatric medication.

22. Despite ongoing treatment, S.P.'s self-harm behavior continued to escalate. She would bang her head against walls and floors and punch herself. S.P.'s destructive behavior escalated to the point that she once again was admitted to the emergency department and then to the children's psychiatric unit at Children's Medical Center.

23. Again, after her discharge S.P. resumed outpatient treatments. Again, her condition deteriorated to the point that she was unmanageable at home.

//
//
//

**A. Anthem's Wrongful Denials of S.P.'s Treatment at New Vision Wilderness**

24. As a result of S.P.'s escalating dangerous behavior and the repeated failure of every other treatment modality, S.P. was admitted to New Vision Wilderness ("New Vision"), an outdoor behavioral health program.

25. At all times relevant, S.P.'s treatment at New Vision was medically necessary, based upon the reasoned medical opinions of her treaters.

26. At all times relevant, S.P.'s treatment at New Vision was a covered benefit under the Plan.

27. Plaintiff filed claims for mental health benefits pursuant to the terms of the Plan for S.P.'s treatment at New Vision.

28. Anthem denied Plaintiff's claims for S.P.'s treatment at New Vision.

29. Plaintiff timely appealed Anthem's denials of S.P.'s claims for treatment at New Vision.

30. Anthem denied Plaintiff's appeals.

31. As a result, Plaintiff was forced to pay for S.P.'s care and treatment at New Vision from his own personal funds.

32. Plaintiff has exhausted all administrative remedies regarding the denial of S.P.'s mental health benefits for her treatment at New Vision.

**B. Anthem's Wrongful Denials of S.P.'s Treatment at ViewPoint Center, LLC**

33. Following S.P.'s treatment at New Vision, at the recommendation of her treatment providers, she was admitted to Summit Achievement of Stow, a residential treatment center in Maine. From there, S.P. returned home briefly.

34. While home, S.P. got into an explosive argument with her family which led to the police being called. Shortly thereafter, S.P. attended a private boarding school.

35. While at the boarding school, S.P.'s condition deteriorated. She threatened suicide. The school kept S.P. sequestered and could not provide the level of care S.P. needed.

36. At the recommendation of her treatment providers, S.P. was admitted to Sedona Sky Academy ("Sedona Sky"), a residential treatment center.

37. While at Sedona Sky, S.P. ran away from the facility, stating she wanted to kill herself, verbally abused staff following her, and refused to return to the facility. The police had to forcibly place her in the squad car and take her to a local hospital, Verde Valley Medical Center ("Verde Valley") where she was treated in the emergency department.

38. The staff at Verde Valley recommended an inpatient behavioral health hospital for S.P.

39. At the recommendation of her treatment providers, S.P. was admitted to ViewPoint Center, LLC ("ViewPoint"), a residential treatment center.

40. At all times relevant, S.P.'s treatment at ViewPoint was medically necessary, based upon the reasoned medical opinions of her treaters.

41. At all times relevant, S.P.'s treatment at ViewPoint was a covered benefit under the Plan.

42. Plaintiff filed claims for mental health benefits pursuant to the terms of the Plan for S.P.'s treatment at ViewPoint.

43. Anthem denied Plaintiff's claims for S.P.'s treatment at ViewPoint, claiming S.P.'s treatment was not medically necessary.

44. Plaintiff timely appealed Anthem's denials of S.P.'s claims for treatment at ViewPoint.

45. Anthem denied Plaintiff's appeals.

46. In denying Plaintiff's claim for care and treatment for S.P. at ViewPoint, Anthem, by and through the Plan, used MCG "level of care guidelines" that are unfair and biased against approving claims for residential treatment such as are at issue herein, and that do not reflect reasonable standards in the medical community.

47. The level of care guidelines used by Anthem, by and through the Plan, to deny S.P.'s care fall below reasonable standards of care in the medical community.

48. Anthem, by and through the Plan, breached the generally accepted standard of care herein by failing to accept and consider that treatment is not limited to simply alleviating an individual's current mental health symptoms, and by ignoring and failing to consider the long-term, chronic nature of S.P.'s mental health needs.

49. Anthem, by and through the Plan, breached the generally accepted standard of care herein by failing to accept and consider that effective treatment of co-morbid, or co-occurring behavioral health disorders requires consideration of the interaction of these disorders, and the implications of these disorders on determining the proper and appropriate level of care.

50. Anthem, by and through the Plan, breached the generally accepted standard of care herein by failing to accept and consider that where there is ambiguity over the proper level of care, that practitioners should err on the side of caution and should place patients in the higher level of care.

51. Anthem, by and through the Plan, breached the generally accepted standard of care herein by improperly focusing on acute symptomology and failing to consider that the same level of care is needed when an acute crisis has passed, and by failing to consider the likelihood of regression and risk of further acute symptomology.

52. Anthem's use, by and through the Plan, of insurer-generated, proprietary guidelines violated the California Mental Health Parity Act.

53. As a result, Plaintiff was forced to pay for S.P.'s care and treatment at ViewPoint from his own personal funds.

54. Plaintiff has exhausted all administrative remedies regarding the denial of S.P.'s mental health benefits for her treatment at ViewPoint.

**C. Anthem's Wrongful Denials of S.P.'s Treatment at Skyland Trail**

55. At the recommendation of her treatment providers, following her treatment at ViewPoint, S.P. was admitted to Skyland Trail, a residential treatment center.

56. Plaintiff filed claims for mental health benefits pursuant to the terms of the Plan for S.P.'s treatment at Skyland Trail.

57. Anthem initially approved Plaintiff's claims for S.P.'s treatment at Skyland Trail. Anthem approved two weeks of treatment.

58. Anthem denied Plaintiff's claims for the remainder of S.P.'s treatment at Skyland Trail, claiming S.P.'s treatment was not medically necessary.

59. Plaintiff timely appealed Anthem's denials of S.P.'s claims for treatment at Skyland Trail.

—

60. Anthem denied Plaintiff's appeals.

61. As a result, Plaintiff was forced to pay for S.P.'s care and treatment at Skyland Trail from his own personal funds.

62. Plaintiff has exhausted all administrative remedies regarding the denial of S.P.'s mental health benefits for her treatment at Skyland Trail.

**CLAIMS FOR RELIEF**
**FIRST CAUSE OF ACTION**
**Recovery of Benefits Due Under an ERISA Benefit Plan**
**(Against BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY ("ANTHEM"); AMN HEALTHCARE SERVICES, INC.; DOES 1-10; Enforcement and Clarification of Rights, Prejudgment and Post Judgment Interest, and Attorneys' Fees and Costs, Pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B))**

63. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

64. ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due under the terms of the plan and to enforce Plaintiff's rights under the terms of a plan.

65. At all relevant times, Plaintiff and his daughter S.P. were insured under the health care plan at issue herein, and Plaintiff's daughter S.P. met the covered health services and medical necessity criteria for treatment required under the terms and conditions of the Plan.

66. By denying Plaintiff's mental health claims for S.P.'s treatment at New Vision, ViewPoint, and Skyland Trail, Defendants have violated, and continue to violate, the terms of the Plan, the terms of ERISA, and Plaintiff's rights thereunder.

67. The provisions of an ERISA plan should be construed so as to render none nugatory and to avoid illusory promises.

//
//
//
//
//

8
COMPLAINT                                                                                    CASE NO.

**SECOND CAUSE OF ACTION**
**Breach of Fiduciary Duty Under ERISA § 502(a)(3), 29 U.S.C. Section 1132(a)(3)**
**(against Defendants ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY ("ANTHEM"); AMN HEALTHCARE SERVICES, INC.; DOES 1-10)**

68. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

69. At all material times herein, Defendants, and each of them, were fiduciaries with respect to their exercise of authority over the management of the Policy, disposition of Plan assets, and administration of the Policy.

70. Plaintiff asserts that a claim for benefits due under the Policy does not provide him with an adequate remedy at law in light of Defendants' continuing course of conduct in violating the terms of the Policy and applicable law as described below.

71. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires fiduciaries to discharge their duties solely in the interests of employee benefit plan participants and beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable expenses of administering the plan.

72. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires fiduciaries to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

73. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), requires fiduciaries to discharge their duties in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA.

74. In committing the acts and omissions herein alleged, Defendants breached their fiduciary duties in violation of ERISA §§ 404(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1104(a)(1)(A)(B) and (D).

75. At all material times herein, Defendants, and each of them, violated these duties by, *inter alia,* the following:

   A. Consciously, unreasonably, intentionally, and without justification, failing to disclose to plan participants their use of MCG "level of care guidelines" that are unfair

and biased against approving claims for residential treatment such as are at issue herein, and that do not reflect reasonable standards in the medical community;

B. Consciously, unreasonably, intentionally, and without justification, violating California's Mental Health Parity Act, Health & Safety Code §1374.72, as well as the Federal Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA") which specifically require that health care plans provide medically necessary diagnosis, care and treatment for the treatment of specified mental health illnesses at a level equal to the provision of benefits for physical illnesses;

C. Consciously and unreasonably failing to investigate all bases upon which to pay and honor Plaintiff's claim, and related claims and/or similar claims, for benefits, and consciously and unreasonably failing to investigate all bases to support coverage fairly and in good faith and refusing to give Plaintiff's interests or the interests of the Plan at least as much consideration as they gave their own;

D. Consciously and unreasonably asserting improper bases for denying full payment of Plaintiff's claim, and related claims and/or similar claims, for mental health care benefits;

E. Consciously and unreasonably interpreting the Plan in a manner designed to deny and minimize benefits and in a manner that thwarts the reasonable expectations of the Plan's beneficiaries and participants in order to maximize its own profits and minimize the benefits that it pays claimants;

F. Consciously and unreasonably refusing to pay Plaintiff's claim, and related claims and/or similar claims, with the knowledge that Plaintiff's claim and similar claims are payable and with the intent of boosting profits at Plaintiff's and other claimants' expense; and

G. Consciously and unreasonably failing to follow the terms of the Plan and applicable regulations governing the administration of claims, and the review of denied claims; and

H. Using medical directors who have no training, expertise or Board Certification in mental and or behavioral health to deny mental health claims and opine on medical necessity; and or having said medical directors farm out all mental health decision-making to third party reviewers, and then rubber-stamping the opinions of said third party reviewers with no independent review, oversight or medical expertise;

76. As a result of Defendants' breaches of fiduciary duty, Plaintiff has been harmed, and the Defendants have been permitted to retain assets and generate earnings on those assets to which Defendants were not entitled.

77. Plaintiff further requests judgment permanently enjoining Defendant Anthem Blue Cross Life and Health Insurance Company from ever again serving as a fiduciary with respect to the Plan, together with attorneys' fees and cost; and enjoining the Plan from using level of care guidelines that fall below reasonable standards in the medical community, either as written or as applied, or both. In addition, Plaintiff seeks appropriate equitable relief from all Defendants, and each of them, including an order by this Court that, based upon principles of waiver and/or estoppel, Plaintiff is entitled to benefits in the amount of the cost of S.P.'s treatment at New Vision, ViewPoint, and Skyland Trail. In addition, Plaintiff seeks disgorgement of profits, make-whole relief, and that Plaintiff be placed in the position that he would have been in had he been paid the full amount of benefits to which he is entitled, including, without limitation, interest, attorneys' fees and other losses resulting from Defendants' breach.

## PRAYER FOR RELIEF

### AS TO ALL DEFENDANTS

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

53. Declare that Defendants, and/or each of them, violated the terms of the Plan by failing to provide mental health benefits;

54. Order Defendants, and/or each of them, to pay the mental health benefits due, together with prejudgment interest on each and every such benefit payment through the date of judgment at the rate of 9% compounded;

55. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. Section 1132(g);

56. Order that Defendants cease using their current level of care guidelines to evaluate claims involving mental health treatment;

57. Order that, to the extent Defendants evaluate mental health claims using level of care guidelines, that it use publicly available level of care guidelines;

58. Order that, to the extent Defendants use level of care guidelines to evaluate mental health claims, that Defendants provide copies of the guidelines to all claimants whose claims are denied, along with the specific section(s) of the guidelines it relied upon;

59. Order that each fiduciary found liable for breaching his/her/its duties to disgorge any profits made through the denial of medically necessary claims through the use of inconsistent care guidelines. This includes, but is not limited to, any violation of ERISA §§ 404 and 406;

60. For appropriate equitable relief pursuant to 29 U.S.C. §§ 1132(a)(2) and (a)(3), including but not limited to, a declaration of Plaintiff's rights to a full and fair review under ERISA, and a declaration of Plan participants' and beneficiaries' rights to a full and fair review;

61. Removal of Anthem Blue Cross Life and Health Insurance Company as a Plan fiduciary;

62. For surcharge relief;

63. An injunction against further denial of Plaintiff's benefits pursuant to 29 U.S.C. §§ 1132(a)(3);

64. Provide such other relief as the Court deems equitable and just.

Dated: April 26, 2022                    Respectfully submitted,

**DL LAW GROUP**

By: */s/ David M. Lilienstein*
David M. Lilienstein
Katie J. Spielman
Attorneys for Plaintiff, STEVEN P.